IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY S.,<br><br>            Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>            Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 4:25-cv-00139-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Anthony S.'s appeal from the decision of the Social Security Administration finding him not disabled.[1] The Court affirms the decision.

## I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 13, filed April 1, 2026.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

1

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not reweigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.    PROCEDURAL HISTORY

As a minor Plaintiff received supplemental security income disability benefits for meeting the autism listing beginning on October 27, 2017.[8] He turned 18 on May 19, 2019, and underwent an age-18 redetermination on October 28, 2020, that found that he was no longer disabled as of October 19, 2020.[9] This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer.[10]

Plaintiff protectively filed an application for a disability and disability insurance benefits, alleging disability beginning October 27, 2017.[11] The claim was denied initially on and upon reconsideration.[12] Plaintiff then requested a hearing before an ALJ,[13] which was held on

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 75–83.

[9] *Id.* at 84–98. At the eligibility redetermination, the agency uses the same rules is uses for adult applications. 20 C.F.R. § 416.987.

[10] R. 174–82.

[11] *Id.* at 353–54.

[12] *Id.* at 108–18.

[13] *Id.* at 194–95.

November 21, 2024.[14] On December 20, 2024, the ALJ found that Plaintiff was not disabled.[15] The Appeals Council denied review on November 5, 2025,[16] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[17]

On December 10, 2025, Plaintiff filed his Complaint in this case.[18] On that same date, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[19] The Commissioner filed an Answer and the Administrative Record on February 2, 2026.[20] Plaintiff filed his Opening Brief on April 1, 2026.[21] The Commissioner's Answer Brief was filed on June 30, 2026.[22] Plaintiff filed his Reply Brief on July 29, 2026.[23]

B.      MEDICAL EVIDENCE

Plaintiff sought benefits based on attention deficient hyperactivity disorder, anxiety, mood, autism spectrum disorder, and behavioral problems/aggression.[24] Plaintiff has long received treatment for these conditions and has been involved in various treatment programs, including therapy, specialized schools, and inpatient residential treatment. Plaintiff has a history

---

[14] *Id.* at 45–74.

[15] *Id.* at 14–44.

[16] *Id.* at 1–6.

[17] 20 C.F.R. §§ 416.1481, 422.210(a).

[18] Docket No. 1.

[19] Docket No. 5.

[20] Docket No. 10.

[21] Docket No. 13.

[22] Docket No. 19.

[23] Docket No. 22.

[24] R. at 422.

of impulsive behaviors and anger management issues. While Plaintiff continued to struggle with these issues, they seem to have declined over time.[25] Koi Cook, the co-director of the group home where Plaintiff lived for approximately five years, explained that Plaintiff struggles to maintain employment without the support of group home staff.[26] He stated that Plaintiff needed prompts or reminders to do most activities. Mr. Cook stated that Plaintiff does not like to follow instructions and has even become physically aggressive when upset, but generally gets along with authority figures and his roommates. Mr. Cook also stated that Plaintiff struggles with impulsive behaviors.

Justin Jourdan, another associate director, explained that Plaintiff had difficulty listening to authority figures and became confrontational and aggressive.[27] Mr. Jourdan echoed Mr. Cook's statements that Plaintiff required prompting to do basic activities. Instead, he explained that Plaintiff spends most of his time playing video games. Mr. Jourdan stated that Plaintiff had become physically aggressive with female staffers and was fired from a job for leaving early and fighting with coworkers.

At the hearing before the ALJ, Plaintiff testified that he got along well with his roommate and his host family.[28] Plaintiff stated that the medications he takes for his mental health are generally effective, though he occasionally needs to adjust the dosage.[29] However, he was not

---

[25] *Id.* at 2006.

[26] *Id.* at 430–80.

[27] *Id.* at 526–68.

[28] *Id.* at 53.

[29] *Id.* at 55.

receiving any other treatment for his mental health.[30] Plaintiff testified that he could take care of his personal needs;[31] drive a car;[32] read, write, and do basic arithmetic;[33] do household chores and yardwork;[34] and cook and follow a simple recipe.[35] Plaintiff testified that he played video games six to eight hours a day and recently built his own computer.[36] Plaintiff also stated that he has six or seven friends and generally gets along with people.[37] Plaintiff testified that he has a history of angry outbursts, but he has been better about controlling them.[38]

C.      THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from July 1, 2020, through the date of the decision.[39] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: oppositional defiance disorder, autism spectrum disorder, anxiety, attention deficit hyperactivity disorder, and depression.[40] At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment.[41] Next, the ALJ

---

[30] *Id.*

[31] *Id.* at 56.

[32] *Id.* at 54.

[33] *Id.*

[34] *Id.* at 57–58.

[35] *Id.*

[36] *Id.* at 58–59.

[37] *Id.* at 63–64.

[38] *Id.* at 64–65.

[39] *Id.* at 20–21.

[40] *Id.* at 21.

[41] *Id.* at 21–23.

found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations.[42] At step four, the ALJ concluded that Plaintiff had no past relevant work.[43] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, he was not disabled.[44]

## III. DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to apply SSR 11-2p; (2) finding that Plaintiff did not meet or equal a listing 12.06; and (3) not including additional limitations related to Plaintiff's impulse control and anger outbursts in his RFC assessment.

A.      SSR 11-2p

SSR 11-2p provides guidance on how the Social Security Administration evaluates disability in young adults, like Plaintiff.[45] That ruling makes clear that the evaluation process uses the same five-step sequential evaluation process.[46] The ruling further provides that an evaluator should consider "all relevant evidence," regardless of whether that comes from an acceptable medical source or "a wide variety of other sources."[47]

The ALJ did not cite to or discuss SSR 11-2p in his decision. However, there is no requirement that he do so. Further, a careful review of the ALJ's decision reveals that he

---

[42] *Id.* at 23–30.

[43] *Id.* at 30.

[44] *Id.* at 30–31.

[45] 2011 WL 4055665 (Sept. 11, 2011).

[46] *Id.* at *3.

[47] *Id.* at *4 (internal quotation marks omitted).

complied with the requirements of SSR 11-12p. The ALJ reviewed all of the relevant evidence, including evidence from the associate directors of Plaintiff's group home, the records from Plaintiff's treatment providers, notes from Plaintiff's group home, Plaintiff's testimony, the opinions of state-agency consultants, and the report from a consultative examination.[48] The ALJ evaluated this evidence in determining Plaintiff's claim for disability. That is all SSR 11-12-p requires.[49]

Plaintiff argues that the ALJ erroneously cherry-picked from the evidence, only sighting evidence favorable to a finding of non-disability. But in doing so, Plaintiff does the same thing, pointing to evidence he believes that could support a finding of greater limitations. It is the role of the ALJ to consider and evaluate the evidence and the fact that there may be evidence supporting greater limitations does not mean the ALJ's decision was unsupported.[50] The Court cannot reweigh the evidence nor substitute its judgment for that of the ALJ.

Moreover, Plaintiff's underlying premise is incorrect. The ALJ did discuss the same evidence that Plaintiff points to in arguing that the ALJ should have found greater limitations. For example, Plaintiff points to the reports from Mr. Cook and Mr. Jourdan discussed above.[51] The ALJ cited to and discussed both reports and concluded that the record did not support a

---

[48] R. at 22–29.

[49] SSR 11-2p, 2011 WL 4055665, at *18.

[50] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

[51] Docket No. 13, at 7–10.

finding of disability.[52] The ALJ also discussed much of the evidence Plaintiff argues required

additional limitations in his RFC.[53] In considering this evidence, the ALJ determined that non-

exertional limitations were appropriate to account for Plaintiff's mental health impairments and

related symptoms. As a result, the ALJ limited Plaintiff "to simple, goal-oriented but not

assembly line-paced work, occasional interaction with others, and routine changes in the

workplace."[54] This conclusion is supported by substantial evidence.

B.      LISTING 12.06

Plaintiff also argues that the ALJ erred in his step three determination. At step three, a

claimant has the "burden to present evidence establishing her impairments meet or equal listed

impairments."[55] In order to satisfy this burden, a claimant must establish that his impairments

"meet all of the specified medical criteria. An impairment that manifests only some of those

criteria, no matter how severely, does not qualify."[56] "To show that an impairment or

combination of impairments meets the requirements of a listing, a claimant must provide specific

medical findings that support each of the various requisite criteria for the impairment."[57]

Under certain listings, disability is established only if either the "A" and "B" criteria are

met or the "A" and "C" criteria are met. The parties' arguments focus on the "C" criteria. The

---

[52] R. at 22.

[53] *Compare* Docket No. 13, at 17–24 *with* R. at 22–29.

[54] R. at 29.

[55] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

[56] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[57] *Lax*, 489 F.3d at 1085; *see also* 20 C.F.R. § 404.1525.

regulations explain that the "C" criteria are used to evaluate mental disorders that are serious and persistent:

> a. We find a mental disorder to be "serious and persistent" when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfies both C1 and C2.
> b. The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder. . . .
> c. The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.[58]

In evaluating the Paragraph C criteria the ALJ stated:

I have also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The evidence does not support a finding that the claimant has a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. Mental status examination findings have generally been unremarkable from spring 2020 through the date of decision. Improvement was noted with medication and a change in living situation. The claimant has not been hospitalized since at least early 2020.[59]

---

[58] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2).

[59] R. at 23 (internal citations omitted).

Plaintiff complains that the ALJ erred in failing to address whether Plaintiff's residence at a group home met the definition of a highly structured setting that might meet the C1 criteria. While Plaintiff is correct that the ALJ did not specifically discuss the C1 criteria, that argument misses the point. To meet Listing 12.06, Plaintiff had to prove the existence of both the C1 and C2 criteria. It seems likely that the ALJ did not consider it necessary to address the C1 criteria because it was met and, instead, chose to focus on the C2 criteria. Indeed, the ALJ's decision mirrors the language used in the regulations to describe marginal adjustment under C2. While Plaintiff focuses much of his argument asserting that Plaintiff's housing situation met the C1 criteria, he does little to challenge the ALJ's determination on marginal adjustment. And though the ALJ's articulation of the C2 criteria could have been more robust, the decision as a whole supports his conclusion.

The regulations define marginal adjustment as follows:

'Marginal adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.[60]

Rather than showing a deterioration in functioning, the treatment notes from Plaintiff's group home largely demonstrated a stabilization in symptoms over time. The ALJ recognized

---

[60] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c).

that Plaintiff lived in a residential facility for a long period of time.[61] However, the ALJ also noted unremarkable mental status examination findings, stable treatment notes, and overall improvement. In doing so, the ALJ noted conflicting evidence, including incidents at the residential treatment facility.[62] Yet, considering the entire record, the ALJ concluded that Plaintiff had not shown marginal adjustment. This conclusion is supported by substantial evidence.

C.    RFC

Social Security Ruling 96-8p requires the ALJ's RFC analysis to assess an individual's ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[63] "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."[64] "The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual."[65] "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[66]

Plaintiff argues that the ALJ's RFC assessment fails to adequately account for his impulsive behavior and anger outbursts. The ALJ noted these issues in discussing the evidence.

---

[61] R. at 29.

[62] *Id.*

[63] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

[64] *Id.* at *3.

[65] *Id.* at *5.

[66] *Id.* at *7.

11

In doing so, he found moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. With these moderate limitations, the ALJ limited Plaintiff's RFC to simple, goal-oriented but not assembly line-paced-work; only occasional interaction with co-workers, supervisors, and the public; and routine changes in the workplace. While Plaintiff points to evidence that could support a more restrictive RFC, the ALJ explained why he did not believe further restrictions were necessary, citing to substantial evidence to support his conclusion. Therefore, there is no reversible error.

IV. CONCLUSION

Having made a thorough review of the entire record, the Court AFFIRMS the Commissioner's decision.

DATED this 5th day of August, 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

12